Mr. and Mrs. Stevens. This is a case where the service is attempting to deny the refund of taxes, income taxes. Do the Stevens allege an overpayment in 95, 96 or 97? Yes. For each year that they allege that, can you show me where in appendix 1 I can find their claim for a refund? Appendix 19, page 19, shows the letter that was initially sent on October 8, 2009, where the Stevens in the reference line references were 1995, 1996, and 1997. And in addition, your honor, in supplemental appendix 50, I believe there's a... You don't contend that's a crime letter? Yes, your honor. We contend the October 8, 2009 letter that was a timely file claim for refund for 1995 and 1996. Taxpayers paid the 1995 and 1996 taxes in January of 2010. They had preemptively sent a letter alleging an equitable recoupment or an offset available to them. And in that October 8 letter, they informed the government that there are amounts owed for tax years 1995 and tax years 1996, that they first received notice in January of 2009, and that the defense to those taxes were that the passive activity losses and carry-forwards would more than offset or close to offset with the difference being $2,698. So they provided notice within this regular period of time. They followed up in January 27, 2010, as is admitted by the government, with a letter that confirms that they pay those taxes and request those taxes be refunded to them, 1995 and 1996. I need a little bit of help. Sure. We're talking about the October 8, 2009 letter, right? Correct. Yes, your honor. And the IRS and the Court of Federal Claims this was a refund claim for 1997. Exactly. No, no, let's keep going here. And then you're saying that, well, there was an amended tax return for 1997 that was attached to this letter, but this letter should also be understood as some type of informal claim for 1995 and then what loses me is that there's a reference to agreed-upon adjustments created by the passive activity loss carry-forwards and passive activity credit carry-forwards. And to me, I read that as not as a challenge to what happened in 1995 and 1996, but it's an agreement as to how the government treated those passive activity losses and credits in 1995 and 1996. And so therefore, this letter doesn't seem to call out a challenge to how the IRS has been analyzing 1995 or 1996. I guess what I'm wondering is what is the specific set of words in this letter, given what I just said, that could be fair notice to the IRS that right here, right now, you are disputing something that happened in 1995 or 1996? I think the key is the way in which an equitable offset occurs, which is that they provide the net tax difference between the two. I don't know that they have to, under equitable recoupment or under statutory mitigations, challenge the specifics in 1995 and 1996 when it creates by the same series, same transaction, an inconsistent position. The IRS's position in 1997 was the taxpayer was passive with respect to the same activities that were non-passive here. That by itself created this inconsistency, results in an offset almost identical, equal to the amount that was due. What the taxpayer was saying is, yes, we conclude this amount, that's fine, but there are sufficient funds available under this theory, under an equitable recoupment or under a statutory mitigation theory. And therefore, the net difference which they invoke in the letter is they remit the tax that's due from that. It's the same thing as paying the tax and asking for it back. This is in October, prior to the payment. January, they make the payment, January 6th, and then they follow it up with a letter that provides refund these taxes, and here's the mechanism for which the refunds do. Ultimately, I think the question, you're getting at precisely the question, which is, was the government under notice under this provision? The first case that the government cites allows for an informal claim for refund. In fact, FIRST provides the same mechanism that was used here. The taxpayer submitted a 1040X for one particular year to provide notice of the change of adjustment. In that case, in fact, the Court of Federal Claims allowed and broadened and let them go to three different years based upon the 1040X providing notice to the government of what the theory was. Alright, this 1040X, unfortunately for the Stephens Group, or Mr. Stephens, is that it was for a closed year, and so therefore it was outside the statute of limitations. Right, which invokes, which is by necessity a prerequisite for statutory mitigation to It also requires an open year, too, right? Agreed, and the open years that we would allege are 1995 and 1996 because the payment was made in January 2010, and the claim for refund occurs within two years of that payment, and so 1995 and 1996 were open years. After 2010, after you paid whatever you needed to pay for 1995 and 1996, you could have filed a claim then for 1995 and 1996, right? You had two years. Correct. So why didn't you? The taxpayer believed this was a claim for 1995 and 1996. They referenced in the subject line 1995 and 1996. Judge Wheeler's first holding was this was a claim for 1995 and which under 1314 is required. You have to assert, you have to calculate the taxes as if you owe it and as if you don't owe it, and you determine whether or not those are offset. Now, one of the key issues that goes into that is whether jurisdiction, whether that creates jurisdiction, and so there's been a lot of different reasons by courts. 7th Circuit, 8th Circuit, 9th, the Supreme Court's looked at this three different times, and if you look through the Dahm analysis, and it's cited by both parties in this case, Dahm says that you look through, and they go back, in fact, and look at Bull and Stone, even 1935 and 1937 cases, and they look at those cases to say, is this being used offensively or defensively, is essentially the bright line test for Judge Newman, is the taxpayer can use an equitable recoupment as a defense to taxes being asserted by the government. What they can't do is go and use it as an independent cause of action, so they couldn't use equitable recoupments to go get the 1997 taxes, but for the fact that it's interrelated to these 1995 and 1996 taxes. So, just exactly when, on your theory of the case, did the date arrive from which the obligation to appeal arose? We believe when the taxpayer paid the taxes on January 6, 2010, they had two years from that to file a claim for refund. We believe this operated by the taxpayers as a claim for refund for these taxes, and we believe they had two years from the date of payment of the taxes. There's some confusion in this case because the taxpayer first gets notice of these taxes in 2009, more than 13 years after the original tax returns were filed. There was no means or mechanism that the taxpayer would have had any notice that there would be a determination on an individual level as to whether or not these would be passive or non-passive determinations for this investment. So, the taxpayer was limited until it received notice. They get their notice in January of 2009. They send this October 2009 letter to clarify that they believe that they are offset by the availability under the statute for equitable, for statutory mitigation or alternatively equitable recoupment. And it's our belief they had two years in which to do that. Okay. Let's hear from the government and we'll have rebuttal time. Okay. Mr. Sheehan? Good morning. May I please report? I'm Anthony Sheehan. I represent the United States. Yes, please. Explain to me how there can be a claim for refund filed before the tax has been paid for which refund is sought. There cannot be, Your Honor. There were no overpayments in 1995 and 1996. We look at the... Exactly. And so, what's wrong with the date that we've just heard? Excuse me? The date? Well... Well, what's wrong with it is that if you look at this claim for refund on October 8, 2009 while there were still outstanding liabilities, this is a claim for refund, an untimely claim for refund for 1997. It says, we have overpaid our 1997 taxes. We want a refund for 1997, but instead of sending us a check, please just credit the money to some other year. But there's been no final determination. You can't appeal until you have some kind of resolution. If this conversation goes on for another five years unresolved, how could they have applied for a refund while they're still in conversation with the service? If they still... If you look at this court's decision in Computer Vision, which is cited in our brief at pages 1368 and 1369, the court announces the doctrine of a general refund claim and proposes this very scenario. If some years are in audit, which could affect other years, and if the time is running out, it is perfectly permissible for the taxpayer to put in a protective claim for refund and say, just use this as a marker. Hold it open, and we'll fill in the details when the audit is over, when we know what they are. So legally, there is certainly the opportunity to file a protective claim for refund. Secondly, the taxpayers have made the argument that they have no idea what was going on with their own taxes, which is simply untenable under this record. Well, they don't say they have no idea, but what certainly is striking... Had they, we say, a prospective claim, there's no final decision. So you're saying that you have to file some document or other long before that document can be acted on because of the negotiations with the service, but nonetheless, when it's all over, it's too late to take any appellate action? If you file a protective claim, that holds those years open. That's the marker that you lay down. If you look at... Do you know of any such rule in any other... I don't recall being directed to any such rule in the agency procedures that you have to file a protective claim well before, years before, that claim ripens. It is acknowledged that you can file a claim for refund before... You can. The question is, must you? That's the question. Yes, you must because if you look at this... And then it gets set aside for another six years. It gets set aside. If you look at the Supreme Court's analysis in Brokamp, especially, the timely filing of a claim for refund is jurisdictional. It's mandatory. There are no equitable tolling. There's no basis. I think Brokamp and I think maybe Dahl also said it. It's in a brief that the idea that I wasn't aware what was going on is simply not an excuse as a matter of law. They're not saying they weren't available. They were arguing from the beginning that there's a different way, a more accurate way of doing this, a fairer way. At least you can't say that the service was innocent of their concern about this payment. I'm trying to understand the position. I don't think that we've seen for any appeal, any agency action, whatever, that until there's some kind of a final determination, nonetheless, you have to say, I'm going to appeal this five years from now. Well, that's pretty standard practice in the tax area of filing a protective claim for refund. For example, in theft loss cases, where there's always a debate over what year the taxpayer gets to claim the theft loss, it is common practice for some taxpayers to file a refund claim for every year just to be sure that that marker is put down. Here, we're auditing 95 and 96. There's the possibility of carry-forwards to 97. Indeed, if you look at the record, in 2003, the IRS proposed the disallowance of the Stevens' passive losses. In that document, there's evidence that S.F.'s, the Stevens' tax department, was supplying spreadsheets. Also, Mr. Stevens was asked about his activities for purposes of material participation during that audit. When the IRS determined corporate level adjustments for S.F. for 95 and 96, S.F. filed an appeal. If you look at pages 147 through 149 of the joint appendix, you'll see that Milton Stevens is listed as a related taxpayer. The proposed disallowances of his passive activity losses are in that document, appendix page 149. It was mentioned in that document, page 147, that notices of deficiency were a distinct possibility. The authorized representative of S.F. Corporation was Ronald M. Clark. If you look at appendix pages 27 through 29, Ronald Clark was also Mr. Stevens' representative. This happened in 2005, while the statute of limitations for 97 was still wide open. The taxpayers knew about the deadline for 97 because they signed the extension, which extended the date for assessment for 97 to the end of 2007. On the face of that form, it said that the statute of limitations for a refund claim was six months after that date. Also, on March 24th, 2008, still within the statute of limitations by several months, there was another proposed disallowance of the passive activity losses and credits for 95 and 96. You're telling us that the notice of appeal had to be filed before any of these further proceedings took place. The notice of appeal, that's really an administrative thing for a refund, Your Honor, had to be filed  That was the deadline. All of these things I cited took place before that deadline. All of these things that would put the Stevens' or their agents on notice, that there was a distinct possibility that the IRS was going to disallow these losses and that that carry forward they wanted might exist. Also, as the court has pointed out, they got a notice of deficiency for 95 and 96 and could have gone to the tax court, or after they paid those taxes, they had two years to file a refund claim specifically for 95 and 96. The law doesn't require them to go to the tax court? It does not require them to go to the tax court. It's the taxpayer's option to go to the tax court or to pay and sue for a refund. They didn't either. They acquiesced in the notice of deficiency and then they filed an untimely refund claim for 2007 saying, create an overpayment for 2007 and apply it to this unpaid liability. That's not a refund claim for a prior year. That's a generate the overpayment in a closed year already. But you see what bothers me? There's no final decision of the service. Final decision wasn't until 2012. So you're saying that nonetheless, years before the final decision, many years before, while all of this back and forth is going on, unless you filed your notice of appeal saying that when it's all over, I'm going to appeal, that you're out of court. The IRS issued the notice of deficiency for 95 and 96 in 2009. Like I said, the taxpayers were, or the agents at least, were aware of what was going on before that. What happened in 2012 was the denial of their refund claim for 97. And they did file this suit within two years after that. But the timely filing of a refund claim is a separate requirement from the timely filing of a refund suit. And they did not file a timely refund claim for 97, nor did they file any refund claim for the earlier two years. They couldn't file a refund claim until they had established that the 95-96 payments could be subject to 97 refund. They could have filed a refund claim for 97 saying 95 and 96 are in audit. You IRS have proposed disallowing our passive activity losses. That will generate a carry forward to 97. We want to put our marker down. Keep that year open with a protective refund claim as this court proposed in its computer vision opinion, page 1368. And if indeed there is this disallowance, here's our refund claim. It's sitting there ready to go and it's timely. That is the mechanism taxpayers had to protect themselves during this ongoing audit of which they and their, at least their agents, were certainly aware. If they had done that, then we could have looked at 97, we could have looked at the merits of 97 and determined whether there were any, the state of Mr. Wilton's passive activity income, if any, in that year. That's an issue that was never reached. But as it stands right now, 97 was late. There was never any proper refund claim for 95-96. All three years are closed. And when all three years are closed, doctrines like equitable recruitment and mitigation simply cannot apply. A lot of the case comes down to interpreting the content of A-19, their October 8, 2009 letter. Yes. In your view, what needed to be said that wasn't said that would have been presented fair notice that they were also trying to file a 95-96 claim? The problem is that, really, you have to have an overpayment before you can get a refund. They never said there was an overpayment, that the IRS got their taxes wrong for 95-96. They essentially admitted here, 95-96 are correct. We owe additional taxes for 95-96. Just use this other money to pay it rather than sending us a check. Find that we overpaid 97. You have to have a refund claim, a timely proper refund claim, before you determine an overpayment. And you have to have an overpayment before there can be a refund. Here, there's no allegation that there was an overpayment for 95-96. And what you certainly cannot do, Your Honor, is say, well, this year is closed, but I found a mistake in it. So I'm going to file a refund claim for an open year and say, well, go back and find an overpayment in a closed year and then move the money around. Because that would throw the statute of limitations out the window. I can't go now and say, oops, I was going through my papers and found a mistake in my 2006 return, long closed, file a refund claim for 2016 based on moving money out of that now long closed year. You need to file a separate refund claim for each year by Regulation 301.6402-2 in this Court's opinion, Union Pacific. And you have to allege, my taxes in this year are wrong. I overpaid because of this mistake. And I want something to happen with that overpayment. The only mistake ever alleged is we didn't get our carry forwards to 1997. What about for a mitigation claim, though? You can, with a mitigation claim, work with an open year and a closed year, right? Right. But by the time they made mitigation, there was no open year anymore. All years were closed. No, but I'm talking back to the October 8, 2009 letter. How could they have framed the letter in a way that would have then permitted them to walk forward with a mitigation claim? They would have had to have said that, they would have had to have filed an actual refund claim for 1995 and 1996, alleging an error there that would have led to further determinations and a ruling. For mitigation, you need to have a determination. There's not been a determination yet in this case. A notice of deficiency doesn't count. There's not been a final court decision. The denial of a refund claim doesn't count. If a refund suit is filed, which is this suit right here. You said in your red brief around 48 or 49 that nobody could argue that there was no determination, that there was any determination. And I didn't see anything in the reply which refuted that. There has been no determination, Your Honor. There's been no closing agreement for these taxpayers. There's one for SF, but it needs to be for these taxpayers if you look at Section 7121 of the code. So there's been no determination and mitigation is not available in this case. If there are no further questions... Any more questions? Thank you. Thank you, Mr. Sheehan. If I could, I'd also like to reference Supplemental Appendix 32, which was an additional filing by the taxpayer-payer during the two-year claims period that further puts the service on notice, specifically the provisions of statutory mitigation were being invoked and provides additional detail. Well, I think... You don't contend that there wasn't determination, do you? We do believe there was a determination. We believe the closing agreement itself, that under 1313A2, a closing agreement, it does not require that it's specific to this taxpayer that the December 7th, 2007 closing agreement that related to 1995 and 1996 was a determination. We also think that the ultimate denial of this claim for refund was a determination. It gives the taxpayer the availability of statutory mitigation. I think they have the right to offset their open year with a closed year. That's the purpose of statutory mitigation, to provide relief for taxpayers that are impacted by the cutting off of an arbitrary period of time. I mean, as Judge Newman noted, what could they have done? The government's only claim is to provide a protective claim for refund, but there was no indications to the taxpayer that 1995 and 1996 were open or that the idea that the passive adjustment could occur. As I've already stated, in 1997, the reason that this reverses itself is because they were passive in 1997. So the determination were non-passive, which is not the normal IRS, and it's not something somebody could concede. They want to quote casualty losses. The taxpayer knows if casualties occurred. They just may not know the specific time. The taxpayer here first gets notice in 2009 of any wrong or any chance to do anything. There was an agreement between the taxpayer and the IRS to extend the time period for making an assessment for 1997 until December 31, 2007. And then, on the face of that, it was known, it was clear that the statute of limitations period would expire on June 30, 2008. For the 1997 tax year. For 1997 to 2001, the taxpayer had knowledge, had the availability. What they didn't know until 2009 was that 1995 and 1996 were subject to audit on this theory. So the taxpayer, the only thing that was out there in the public domain or available, this was not the tax matter partner. This was one shareholder of the corporation. The only thing out there was a federal court case initiated by the government in which they challenged some of the grouping of the companies. This federal court case had no impact on this particular taxpayer. They could be monitoring closely all of the developments and the sole government issue was whether or not two passive activities should be grouped together or not. Zero impact on this taxpayer. They had no notice that they were impacted by 1995 and 1996 until January 2009. There's nothing they could have done. The remedy proposed by the government is nonsensical because that means every taxpayer should file a protected claim for refund for every item because you may get a notice in 12 years that a capital loss you deducted this year is gone. It's not a true remedy for this taxpayer. They received it. They received it and as noted, one of the important things in this case is the government's case concluded with that closing agreement in 2007. The statute closed in 2008. June 30, 2008. The taxpayer first gets notice January 2009. The government sits on this case for 14 months with zero activity and sends a document that the IRS admits was in their file since 2003. So they send a document that's been in their file since 2003 in 2009, six months after the statute is run. The only person with knowledge that the statute was in play was government. That seems grounds for equitable tolling if nothing else. There's a lot of wrongdoing in this case and one is that 14 months with zero activity and so in our brief we've alleged it's negligent at best intentional at worst and all we're asking for is that this case proceed and let us do the work and do discovery to determine was this activity negligent or was it intentional and if so that impacts the taxpayer's case. It also impacts the decision of the determination was the government on notice or it impacts issues concerning whether or not a proper claim exists because we will have to analyze certain items whether or not the government received whether the taxpayer had notice. They want to allege all these factual things but all of the indications are that if any information was either available in the government's file or went to the tax matter partner there's nothing that this taxpayer received notice or any indication that his 95 and 96 taxes were impacted until 2009 and the government has zero remedy and zero place for the taxpayer to go. Any more questions? Thank you. Thank you both. The case is taken under submission.